UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT E.<br><br>Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-6081-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] After review, the Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered Plaintiff's testimony, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

sentence four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff filed his applications for SSI and DIB on November 24, 2020, alleging disability as of January 20, 2009.[2] Administrative Record ("AR") 144. His claims were denied initially on October 8, 2021, and upon reconsideration on January 18, 2023. AR 144–45, 181–82. Hearings were held before ALJ Shawn Bozarth ("the ALJ") on June 4, 2024,[3] and July 10, 2024. AR 81, 104. The ALJ issued a decision denying Plaintiff's claim on September 17, 2024. AR 34. The Appeals Council denied Plaintiff's request for review on July 31, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 6. Plaintiff filed a complaint with this Court on December 2, 2025, seeking judicial review of the ALJ's decision. Dkt. 1.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons

[2] Plaintiff amended his alleged onset date to November 24, 2020, asserting a closed period of disability from that date until July 24, 2023. AR 23.

[3] Plaintiff withdrew his request for a hearing as to his Title II DIB claim at the June 4, 2024, hearing, and the ALJ subsequently dismissed Plaintiff's application for DIB. AR 22.

provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

## III. Discussion

Plaintiff argues that the ALJ erred in considering: (1) Plaintiff's subjective symptom testimony; (2) whether Plaintiff met a Listing at Step Three; (3) certain medical opinion evidence; and (4) inconsistencies between the Dictionary of Occupational Titles and the vocational expert's testimony. Dkt. 10 at 2.

### A. Subjective Symptom Testimony

First, Plaintiff argues that the ALJ erred by failing "to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony." Dkt. 10 at 3.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence does not have to corroborate the severity of the alleged symptoms, rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* at 1112 (citation omitted). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

At his hearing, Plaintiff testified that, in the closed period, his mental impairments caused him to "go into panic mode. [Plaintiff] also refer[s] to it as fight or flight. It's (sic) things start spinning . . . [Plaintiff] ha[s] a hard time breathing[,] [Plaintiff] [had] anxiety attacks to the point where [he has] actually gone to the hospital because [he] thought it was a heart attack but it was actually severe anxiety." AR 109. As for how his symptoms affected his ability to function, Plaintiff testified that, "[i]f it wasn't for [prescription medication] I take four times a day, I probably would never leave my house. It's rough." AR 110. He testified that his symptoms made it so that he "wouldn't want to do anything. I'd spend hours laying in bed. I'd spend hours on the couch. I had no interest [and] no will to want to do anything." AR 111. Finally, Plaintiff testified there were "days where [he] didn't want to live anymore . . . I battle with that every day." *Id.*

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms and did not state there was any evidence of malingering. AR 28–29. The ALJ, therefore, was required to offer specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Smith*, 14 F.4th at 1111. Here, the ALJ sought to do so based upon Plaintiff's improvement with medication and inconsistencies with the medical record. AR 29–30. These are proper bases for an ALJ to discount a claimant's subjective

symptom testimony. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citation omitted) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

i. *Improvement with Treatment*

First the ALJ found that Plaintiff's testimony was inconsistent with treatment records showing "positive response to treatment and medication management." AR 29. Upon review, the Court observes that the ALJ identifies two different periods of "improvement" in the decision, in early-2020, and late-2021, and cites Exhibit 5F, and Exhibit 6F, for this proposition. *Id*. In both instances, however, the record more accurately reflects limited period of improvements in Plaintiff's mental health symptoms, with symptoms manifesting again, shortly thereafter.

Despite some improvement "from March through May 2021[,]" as Plaintiff argues, he nonetheless, experienced "profound difficulty being in public places" in that period. AR 788. As Plaintiff argues, just two months later, in July 2021, Plaintiff's prescriptions were increased because he "has accepted defeat. Anxiety is through the roof. Anger is out of control[,]" and depression and anxiety were "10 on a scale of 0-10." AR 876; *see also* Dkt. 10 at 6.

The ALJ goes on to cite records from late-2021 as additional evidence of Plaintiff's improvement with treatment,[4] but as Plaintiff argues "by April and May 2022, [Plaintiff's] depression and anxiety were again high despite medication compliance, and [Plaintiff] was sleeping only three to four hours per night." Dkt. 10 at 6. Once again, despite the ALJ's finding

---

[4] The ALJ is correct to note Exhibit B6F/7-8, shows that on November 17, 2021, Plaintiff reported depression "over the last two weeks was 0 on a scale of 0-10" and that anxiety over the last two weeks had just been "situational." AR 839. Just one month earlier, Exhibit B6F/10, however, shows that, in late-October 2021, Plaintiff reported depression was "3 on a scale of 0-10" and anxiety was "6 on a scale of 0-10." AR 842.

that Plaintiff "showed a positive response to treatment and medication management[,]" in 2021, AR 29, the record more accurately indicates that Plaintiff experienced a limited period of improvement in his mental health symptoms in late-2021, but by 2022, his mental health issues had manifested again. The ALJ, himself, noted "situational depression and anxiety during a January 17, 2022[,]" appointment. AR 30.

Similarly, in March 2022, Plaintiff reported depression was "4 on a scale of 0-10" but he "had a very difficult time controlling his anxiety" during his birthday party. AR 1048. By April 2022, Plaintiff's depression and anxiety were "7 out of 10" and Plaintiff expressed "[p]assive thoughts of suicide with no intent or plan[,]" although his medication was increased. AR 1044–46.

In September 2022, Plaintiff reported depression "7/10[,]" anxiety "10/10[,]" and reported "panic attacks about 3 times a day" that "[a]ffect[ ] him so severely [he] doesn't want to get out of bed." AR 1032. Plaintiff's medications subsequently increased, again. *Id.* Finally, in May 2023, near the end of the closed period, Plaintiff reported "[h]aving more depression and worsening irritability[,]" that he "[did]n't know if the meds are even working. Denies any new stressors[,]" and these records note his depression was "high." AR 999–1000.

It is it is a well-established principle in this jurisdiction that "[a]n ALJ cannot simply pick out a few isolated instances of improvement over a period of months or years but must interpret reports of improvement . . . with an understanding of the [claimant's] overall well-being and the nature of [their] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (internal quotation marks and citation omitted). Here, the ALJ rejected Plaintiff's subjective symptom testimony regarding his PTSD, anxiety, depression, and their limiting effects on him, based upon two short windows of self-reported improvement with medication in 2020, and 2021, which were

bookended by lengthy periods of unsuccessful and/or modulating treatment. AR 29–30. This was error. *Attmore*, 827 F.3d at 877 (emphasis in original) (internal quotation marks and citation omitted) (holding that "the examples an ALJ chooses must *in fact* constitute examples of a broader development" when considering whether a claimant's symptoms have improved with treatment).

For this reason, the Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony on the basis that Plaintiff's mental health conditions improved with treatment.

ii. *Inconsistencies with the Medical Record*

Alternatively, the ALJ found that Plaintiff's testimony was inconsistent with medical records showing "diminished symptoms" and "good progress while in services" with a treating provider. AR 29. While the ALJ acknowledged that Plaintiff "noted situational depression and anxiety during a January 17, 2022[,] follow up appointment[,]" the ALJ, nonetheless, found Plaintiff was "oriented to self, date, location, and situation[,] [h]is recent and remote memory we[r]e intact[,] his behavior was cooperative, and his attention and concentration focused." AR 30.

The ALJ has not shown how the findings from this one appointment are inconsistent with Plaintiff's testimony regarding his mental health impairments, which largely pertained to Plaintiff's paranoia and inability to interact with others or leave his home. *See Halee L. J. v. Comm'r of Soc. Sec.*, No. C25-509-BAT, 2025 WL 2753611, at *3 (W.D. Wash. Sept. 29, 2025) ("[N]ormal orientation, perception, concentration, and abstract thought [ ] does not contradict the abnormal findings related to [the claimant]'s social and emotional function."). Moreover, despite the ALJ's finding that "treatment records documented generally much of the same [normal

mental status evaluations observed at the January 17, 2022, appointment] through the remainder of the period at issue with [Plaintiff] continuing with counseling and medication management[,]" AR 30—the record more accurately, as discussed, *supra*, and as acknowledged by the ALJ—demonstrated a "waxing and waning" of Plaintiff's pertinent mental health symptoms during the period at issue. *See generally* AR 779–895, 999–1000, 1044. For instance, as Plaintiff argues, "[t]he same records the ALJ cited for normal orientation and intact memory also documented Plaintiff's active PTSD nightmares, panic attacks so severe that he had to flee a Walmart, paranoia causing him to constantly monitor his property for intruders, and difficulty leaving his home." Dkt. 10 at 9; AR 747, 753, 823.

Here too, the ALJ falls afoul of a longstanding principle in this jurisdiction; "[t]he fact that symptoms wax and wane in the course of treatment is to be expected; it does not create an inconsistency." *See Garrison*, 759 F.3d 995, 1017 (9th Cir. 2014) (internal quotation marks and citation omitted). The Court concludes, therefore, that the ALJ's finding that Plaintiff's subjective symptom testimony regarding his mental impairments was inconsistent with the record, itself, is not supported by substantial evidence.

For these reasons, the Court concludes that the ALJ failed to offer specific, clear, and convincing reasons, based upon substantial evidence, for discounting Plaintiff's subjective symptom testimony regarding his mental health impairments and their impact on Plaintiff's ability to function in the workplace. Applying the harmless error analysis, the Court concludes that the ALJ committed harmful error in evaluating Plaintiff's subjective symptom testimony because, had the ALJ properly considered Plaintiff's limitations, the RFC may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's

error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for additional proceedings. *See Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115.

B. Remaining Issues

In light of this disposition, the Court need not address Plaintiff's remaining arguments about the medical opinion evidence or the ALJ's Step Three findings because, on remand, the ALJ is instructed to reconsider the entire Social Security sequential process, including the medical opinion evidence and Plaintiff's subjective symptom testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

**C. Conclusion**

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 10th day of August, 2026.

David W. Christel
United States Magistrate Judge